UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ALLA OPENGEYM,

    Plaintiff,                               CIVIL ACTION NO. 14-CV-13037

vs.                                      DISTRICT JUDGE PAUL D. BORMAN

                                             MAGISTRATE JUDGE MONA K. MAJZOUB

HCR MANOR CARE,

    Defendant.

_____/

## REPORT AND RECOMMENDATION

Plaintiff Alla Opengeym, proceeding *pro se*, filed this action against Defendant HCR Manor Care[1] alleging employment discrimination in violation of Title VII of the Civil Rights Act of 1964. (Docket no. 1.) Before the Court is Defendant's Motion for Summary Judgment. (Docket no. 21.) In response to Defendant's Motion, Plaintiff sent a document titled "Motion for Summary Judgment #21" directly to Defendant; the document was not filed with the Court. Defendant filed a Reply to Plaintiff's responsive document.[2] (Docket no. 27.) The Motion has been referred for consideration. (Docket no. 23.) The undersigned has reviewed the pleadings, dispenses with a hearing pursuant to E.D. Mich. L.R. 7.1(f)(2), and issues this Report and

---

[1] Defendant notes that its proper name is Heartland Employment Services, LLC. (Docket no. 21 at 1 n.1.)

[2] The Court was not aware of Plaintiff's response to Defendant's Motion until reading Defendant's Reply. The Court has, however, obtained a copy of the document from Defendant. (Docket no. 31.) As Defendant notes, although Plaintiff's document is titled "Motion for Summary Judgment," it appears to respond to Defendant's Motion (i.e., docket "#21"), and it does not set forth any argument for summary judgment. Moreover, the document was sent on December 11, 2015, nearly a month after dispositive motion cutoff in this matter. Therefore, the Court has considered this document as a Response to Defendant's Motion.

1

Recommendation.

**I.     Recommendation**

For the reasons stated herein, Defendant's Motion for Summary Judgment [21] should be GRANTED.   This matter should be dismissed in its entirety.

**II.    Report**

    **A.     Facts**

Through her Complaint (filed in the form of a letter attached to an employment-discrimination cover sheet), Plaintiff alleges that Defendant is "enforcing an unconstitutional 'Excluding policy;'" that she was "discriminated against and treated inferior, (based on [her] ethnicity[3] related to company assumptions, based on [her] accent);" and that she was "denied . . . equal educational opportunities and equal access to support from the team."  (*Id.* at 3.)   Plaintiff states that she "came to America as a refugee from the Former Soviet Union" and that she "was working in a hostile work environment from [Defendant's] Director of Nursing." (*Id.*)   Plaintiff further alleges that she brought some safety concerns to the attention of management, but Defendant "continued to support decisions to exclude [her] from HCR manor Care Cooperation."  (*Id.* at 4.)   Finally, Plaintiff claims that "[a]s a member of a lifelong socially excluded minority group," she suffers from "chronic stress related to discrimination and social exclusion."   She argues that Defendant's policies "run contrary to general societal ideas" and that this will "have a direct detrimental impact on [Defendant's] services."   (*Id.*)   Plaintiff seeks "compensation for the moral damages, loss of benefits, and loss of income" related to the alleged

---

[3] In her Complaint, Plaintiff does not identify the ethnic group to which she belongs, but later filings indicate that she identifies as a Russian Jew and that she came to the U.S. from Latvia approximately 20 years ago.   (*See* docket no. 21 at 7.)

discrimination. (*Id.*)

Ultimately, Plaintiff's claims center around her time with Defendant as a LPN nurse supervisor. Defendant hired Plaintiff on October 2, 2007 to work at its West Bloomfield location, although she did spend some time working at Defendant's other facilities. In its Motion, Defendant sets forth nine pages of undisputed facts, all of which are supported by exhibits attached thereto, including Plaintiff's deposition testimony. (*See* docket no. 21 at 8-16.) Plaintiff does not dispute any material facts in her response. (*See* docket no. 31.)

In relevant part, Defendant notes that Plaintiff received regular training as part of her employment, particularly with regard to proper administration and securing of medication, how to handle patients if they fall, and how to complete various administrative forms. (*See* docket no. 21 at 8-11.) Defendant also describes its progressive discipline policy, which subjects an employee to termination where an employee receives four "Minor/Type C" rules violations during a one-year period. (*Id.* at 11-12.) Plaintiff received four such violations for failing to follow rules and procedures discussed during her training:

- February 15, 2012: Plaintiff improperly left medication with a patient and left her medication cart unlocked. (Docket no. 21-22 at 1.)

- July 2, 2012: Plaintiff dispensed medication to a patient in a non-confidential setting and without proper liquid; she also failed to properly complete certain documentation. (Docket no. 21-25 at 1.)

- August 9, 2012: Plaintiff failed to give a patient the proper medication for 3 consecutive days. (Docket no. 21-28 at 1.)

- October 24, 2012: After a patient fell, Plaintiff failed to complete the appropriate documentation, did not update the patient's care plan, and did not add an intervention plan for the patient. (Docket no. 21-32 at 1.)

After this fourth violation, Plaintiff was suspended pending an investigation into her conduct and

was ultimately terminated. (*See* docket no. 21-42.)

After Plaintiff was terminated, she filed a grievance alleging that she had "been discriminated [against] base[d] on [her] national origin." (Docket no. 21-34 at 2.) In her letter attached to the grievance, she noted the following:

> One day I was sitting by the nursing station and heard some "Joke," telling (sic) by HCR employee, who was a nurse. . . . [The joke] is awful! Yes, Jewish people are minority, but nurses like me always going (sic) to be advocate (sic) for patients, give them strength, give them hope, and give them mental support.[4]

(Docket no. 21-34 at 2.) Plaintiff states that she "believe[s] that management intentionally manufactured [a] reason to fire [her]." (*Id.*) Nevertheless, she acknowledges her mistake and notes that her letter is "not . . . to dispute the reason for [her] termination;" instead, Plaintiff argues that she was "denied proper instruction-clarification and time for correction." (*Id.*)

Plaintiff's termination was upheld (docket no. 21-36), but after seeing Plaintiff's letter, Defendant's Human Resources Director, Heidi Rottach, decided to look into Plaintiff's allegation regarding the offensive joke. Ms. Rottach spoke with Plaintiff on November 27, 2012, to verify the information in her letter and to find out the name of the nurse that told the joke. (*See* docket no. 21-43.) Ms. Rottach and Defendant's Administrator, Brent Hayes, then spoke with the nurse; the nurse denied telling the joke. (*Id.* at 13.)

### B. Governing Law

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A moving party may meet that burden "by 'showing' – that is, pointing out to the

---

[4] The "joke" described by Plaintiff need not be repeated herein. For purposes of this Report and Recommendation, the undersigned accepts Plaintiff's contention that the joke is offensive.

district court – that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986). Rule 56 expressly provides that:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). The Rule also provides the consequences of failing to properly support or address a fact:

> If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may:
>
> (1) give an opportunity to properly support or address the fact;
>
> (2) consider the fact undisputed for purposes of the motion;
>
> (3) grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it; or
> (4) issue any other appropriate order.

Fed. R. Civ. P. 56(e). "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

When the moving party has met its burden under rule 56, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industries Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Ultimately a district court must determine whether the record as a whole presents a genuine issue of material fact, *id.* at 587, drawing "all justifiable inferences in the light most favorable to the non-moving party," *Hager v.*

*Pike County Bd. Of Education*, 286 F.3d 366, 370 (6th Cir. 2002).

    **C.    Analysis**

        **1.    Defendant's Motion for Summary Judgment**

To support a claim of discriminatory termination under Title VII, Plaintiff must show that she: (1) "was a member of a protected class," (2) was discharged, (3) "was qualified for the position," and (4) "was replaced by a person outside the class." *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th Cir. 1992). Alternatively, instead of showing that she was replaced, Plaintiff can show that "a comparable non-protected person was treated better." *Id.* Defendant acknowledges that Plaintiff is a member of a protected class and that she was discharged but asserts that she was not qualified for the position (due to her multiple rules violations), that she was never "replaced," and that she was not treated differently than a similarly-situated employee. (Docket no. 21 at 18-21.) The undersigned agrees.

With regard to her qualifications, "[t]he test for determining whether an employee is otherwise qualified is whether '[s]he was doing [her] job well enough to meet h[er] employer's legitimate expectations . . . *at the time of her termination*.'" *Strickland v. Fed. Express Corp.*, 45 F. App'x 421, 424 (6th Cir. 2002) (quoting *Dews v. A.B. Dick Co.,* 231 F.3d 1016, 1023 (6th Cir.2000); *Chappell v. GTE Products Corp.,* 803 F.2d 261, 266 (6th Cir.1986)) (emphasis added). Plaintiff acknowledges that she received four Minor/Type C violations between February 15, 2012, and October 24, 2012. The record supports this finding, and pursuant to Defendant's HR policy, any employee with four such violations is subject to termination. Plaintiff has provided no evidence or argument to the contrary. Thus, because Plaintiff was not "qualified" for the

6

position at the time of her termination, her claim fails.[5]

Plaintiff also fails to show that she was replaced by anyone, let alone someone outside her protected class. Defendant acknowledges that three LPN candidates were interviewed and hired around the time Plaintiff was terminated, but Ms. Rottach notes that Defendant continually hires nurses at all of its facilities. (Docket no. 21-44 ¶5.) Ms. Rottach also noted, though, that "none of these individuals was considered Plaintiff's direct replacement nor is it possible to ascertain whether any of these individuals absorbed any of Plaintiff's job duties." (*Id.* ¶7.) That is, Plaintiff's job duties were absorbed by the nursing staff as a whole, not any one individual. In the Sixth Circuit, "[a] person is considered replaced 'only when another employee is hired or reassigned to perform the plaintiff's duties[;' a] person is not considered replaced when his duties are absorbed by another person 'or when the work is redistributed among other existing employees already performing related work.'" *Geiger v. Tower Auto.*, 579 F.3d 614, 623 (6th Cir. 2009) (quoting *Barnes v. GenCorp*, 896 F.2d 1457, 1465 (6th Cir. 1990)).

Likewise, Plaintiff fails to show that similarly situated employees not in her protected class were treated more favorably. To the contrary, Plaintiff acknowledges that other nurses were disciplined for rules violations, and Ms. Rottach indicates that other LPN nurse supervisors have been written up for multiple Type C violations, which has resulted in the termination of those employees. (Docket no. 21-44 ¶8.) Plaintiff provides no evidence to the contrary. Thus, because Plaintiff was not "replaced," and because she cannot show that other similarly situated employees were treated more favorably, her claim fails. Defendant's Motion for Summary

---

[5] For these same reasons, as Defendant argues, even if Plaintiff could establish that she was qualified at the time of her termination, Defendant has shown a legitimate, nondiscriminatory reason for Plaintiff's termination, and Plaintiff has failed to show that her termination was a mere pretext.

Judgment should be granted.

### 2. **Plaintiff's Argument**

Plaintiff's response to Defendant's Motion does not address the legal basis for her claim and does not directly address Defendant's argument. Like her other filings, Plaintiff relies on the supposition that the Court can find in her favor based solely on her plight as a Russian Jew and the mental anguish she felt when her co-worker told an offensive joke. Plaintiff feels that her employer should be held responsible for the offensive conduct of an employee and that its failure to proactively educate employees about the holocaust should be addressed. Plaintiff takes particular offense to the nurse who told the joke being promoted to a management position sometime after Plaintiff's termination. (*See* docket no. 31 at 6.)

The undersigned acknowledges Plaintiff's position, but there is no evidence to suggest that Defendant was aware of the offensive conduct before it occurred or that Defendant condoned the conduct after Plaintiff brought it to Defendant's attention. To the contrary, Defendant's administration appears to have (at least attempted) to address the conduct with the offending nurse. Moreover, Plaintiff chose not to bring this conduct to Defendant's attention until after she was terminated, and there is no evidence that the offending nurse had anything to do with Plaintiff's termination, further supporting Defendant's position that Plaintiff's religion and national origin were not factors in her termination. Thus, while the undersigned agrees that offensive jokes should be avoided in the workplace, Plaintiff's claim has no legal basis under Title VII.

### D. **Conclusion**

For the reasons stated above, the undersigned recommends granting Defendant's Motion to for Summary Judgment [21]. This matter should be dismissed in its entirety.

### III. Notice to Parties Regarding Objections

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n Of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Any objections must be labeled as "Objection #1," "Objection #2," etc. Any objection must recite *precisely* the provision of this Report and Recommendation to which it pertains. Not later than fourteen days after service of an objection, the opposing party must file a concise response proportionate to the objections in length and complexity. The response must specifically address each issue raised in the objections, in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.

Dated: March 30, 2016                     s/ Mona K. Majzoub
                                                             MONA K. MAJZOUB
                                                             UNITED STATES MAGISTRATE JUDGE

## PROOF OF SERVICE

      I hereby certify that a copy of this Report and Recommendation was served on Plaintiff Alla Opengeym, and counsel of record on this date.

Dated:   March 30, 2016                  s/ Lisa C. Bartlett
                                                   Case Manager